FILED 10 MAY 7 7:36 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ADENAMAR GONZALES, LEONARDO
COBOS-PEREZ, LUIS ENRIQUE
GARCIA-GALVES, ERASTO
JOVEL-OSORIO, JORDAN VELAZQUEZ,
FRANCISCO VILLANUEVA-VILLATORO,
NOE ARNOLODO ZAMORA-RODRIQUEZ,
AREIL GARCIA-LAPARRA, and
YUCUNDO REYNOSO,

          Plaintiffs,

v.

STERLING BUILDERS, INC., an
Oregon corporation d/b/a
P.I.C CONSTRUCTION, INC., MST
CONSTRUCTION, INC., and JADE
PROPERTIES INC.; THOMAS SCOTT
MICKEL; HAMMER CONSTRUCTION, LLC;
CLEAR CREEK CUSTOM HOMES, L.L.C.;
JOSE CERVANTES-CHICO; LC
CONSTRUCTION AND REMODELING, LLC;
LARRY R. COWLISHAW; AND LARRY B.
COWLISHAW,

          Defendants.

08-CV-943-BR

OPINION AND ORDER

1 - OPINION AND ORDER

08-943
Replace

84

**D. MICHAEL DALE**
P.O. Box 1032
Cornelius, OR 97113
(503) 357-8290

**MEG HEATON**
Northwest Workers' Justice Project
917 S.W. Oak Street
Suite 412
Portland, OR 97205
(503) 525-8454

      Attorneys for PlaintiffS

**STEVEN C. BURKE**
Case & Dusterhoff, LLP
9800 S.W. Beaverton Hillsdale Hwy.
Suite 200
Beaverton, OR 97005
(503) 641-7222

      Attorneys for Defendants LC Construction and
      Remodeling, Inc.; Larry B. Cowlishaw; and Larry R.
      Cowlishaw

**BROWN, Judge.**

    This matter comes before the Court on the Motion (#63) for
Summary Judgment of LC Construction and Remodeling, Inc., and
Larry B. Cowlishaw.  For the reasons that follow, the Court
**GRANTS** Defendants' Motion.

**BACKGROUND**

    In October 2006 Defendant LC Construction, acting as a
general contractor, entered into a contract with Defendant

2 - OPINION AND ORDER

Sterling Builders, Inc., d/b/a P.I.C. Construction Inc., to

provide framers for a residential construction project. P.I.C.,

in turn, subcontracted with Defendant Hammer Construction, LLC,

to provide the framers for the project. Hammer hired Plaintiffs

to perform the necessary framing work.

Plaintiffs performed framing work on the project from

October through December 2006. LC Construction paid P.I.C. all

amounts due P.I.C. in the time required under their contract.

The record does not reflect whether P.I.C. paid Hammer the amount

due under its agreement with Hammer.

At some point Hammer's workers "walked off the job" because

they were not being paid. The record does not reflect whether

Plaintiffs were some or all of the Hammer employees who walked

off the job. As a result of the "walkoff," LC Construction

stopped paying P.I.C. and began paying Hammer directly.

On August 11, 2008, Plaintiffs filed a Complaint in this

Court against Sterling Builders d/b/a P.I.C. Construction Inc.,

MST Construction Inc., and Jade Properties Inc.; Thomas Scott

Mickel d/b/a TSM Construction; Hammer Construction, LLC; Arturo

Aguilar Alvarado; Clear Creek Custom Homes, LLC; Jose

Cervantes-Chico; Gennadiy Construction, LLC; LC Construction and

3 - OPINION AND ORDER

Remodeling, LLC; Larry Cowlishaw;[1] Alberto Diaz Painting, Inc.;

and Alberto Diaz.  Plaintiffs alleged Defendants violated the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, when

they failed to pay Plaintiffs the federal minimum wage, to pay

certain Plaintiffs their federal overtime wages, and to pay

Plaintiffs promptly upon termination of their employment.

Plaintiffs also alleged these Defendants violated Oregon's wage-

and-hour laws when they failed to pay Plaintiffs Oregon's minimum

wage, to pay certain Plaintiffs Oregon's overtime wages, and to

pay Plaintiffs promptly upon termination of their employment.

Plaintiffs also alleged claims for fraud and negligent

misrepresentation against Cervantes-Chico.

On March 12, 2009, the Court granted Plaintiffs' Motion to

Dismiss Defendants Arturo Aguilar Alvarado; Gennadiy

Construction, LLC; Alberto Diaz Painting, Inc.; and Alberto Diaz

without prejudice.  On that same day the Court granted

Plaintiffs' Motion for Entry of Default as to Defendants Sterling

Builders, Inc. (and its associated d/b/as); Thomas Scott Mickel;

Hammer Construction, LLC; Clear Creek Custom Homes, LLC; and Jose

Cervantes-Chico.

---

[1] The original Complaint did not specify whether Plaintiffs'
brought claims were against Larry B. Cowlishaw or Larry R.
Cowlishaw.  On April 28, 2009, Plaintiffs filed the Declaration
of Meg Heaton in which she testified Plaintiffs had learned
during discovery that there were two Larry Cowlishaws associated
with LC Construction:  Larry B. Cowlishaw and Larry R. Cowlishaw.

4 - OPINION AND ORDER

On May 26, 2009, Plaintiffs filed an Amended Complaint to bring claims against Larry B. Cowlishaw and Larry R. Cowlishaw and to remove Defendants Arturo Aguilar Alvarado, Gennadiy Construction LLC, Alberto Diaz Painting Inc., and Alberto Diaz as parties.

On October 2, 2009, the Court entered an Order dismissing Larry R. Cowlishaw with prejudice.

After entry of the various dismissals and defaults in this matter, the only remaining undefaulted Defendants are Larry B. Cowlishaw and LC Construction.

On December 9, 2009, Defendants Larry B. Cowlishaw and LC Construction filed a Motion in which they seek summary judgment as to all of Plaintiffs' claims against them.

On March 3, 2010, the Court heard oral argument on Defendants' Motion and took the Motion under advisement.

## , **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the

5 - OPINION AND ORDER

pleadings and show there is a genuine issue of material fact for
trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,
248 (1986)).  The court must draw all reasonable inferences in
favor of the nonmoving party.  *Id.*  "Summary judgment cannot be
granted where contrary inferences may be drawn from the evidence
as to material issues."  *Easter v. Am. W. Fin.,* 381 F.3d 948, 957
(9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v.
Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.
1982)).

A mere disagreement about a material issue of fact,
however, does not preclude summary judgment.  *Jackson v. Bank of
Haw.,* 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving
party's claims are factually implausible, that party must "come
forward with more persuasive evidence than otherwise would be
necessary."  *Wong v. Regents of Univ. of Cal.,* 379 F.3d 1097 (9th
Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)
(citing *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1149
(9th Cir. 1998)).

The substantive law governing a claim or a defense
determines whether a fact is material.  *Miller v. Glenn Miller*

*Prod., Inc.*, 454 F.3d 975, 987 (9ᵗʰ Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Defendants move for summary judgment on the grounds that
they are not employers within the meaning of either the FLSA or
Oregon's wage-and-hour laws.[2]  Pursuant to Federal Rule of Civil
Procedure 11, Oregon Revised Statute § 20.105, and the FLSA
Defendants also seek attorneys' fees incurred in defending them
against Plaintiff's claims.

**I.    Claims against Defendants by Plaintiffs Giovanni
       Ballesteros-Moreno, Leonardo Cobos-Perez, Luis Enrique
       Garcia-Galvez, Erasto Jovel-Osorio, Francisco
       Villanueva-Villatoro, Noe Arnoldo Zamora-Rodriguez, Ariel
       Garcia-Laparra, and Yucundo Reynoso.**

Defendants assert they are entitled to summary judgment as
to all claims against Defendants brought by Plaintiffs Giovanni
Ballesteros-Moreno, Leonardo Cobos-Perez, Luis Enrique Garcia-
Galvez, Erasto Jovel-Osorio, Francisco Villanueva-Villatoro, Noe
Arnoldo Zamora-Rodriguez, Ariel Garcia- Laparra, and Yucundo
Reynoso because these Plaintiffs have not offered any evidence to

---

[2] Defendants also assert they did not commit either fraud or
negligent misrepresentation against Plaintiffs.  Although it is
unclear in Plaintiffs' Amended Complaint, Plaintiffs clarified at
oral argument that they intended to bring those claims only
against Cervantes-Chico against whom default already has been
entered.

7 - OPINION AND ORDER

support their claims that Defendants violated the FLSA and
Oregon's wage-and-hour laws.

Plaintiffs offered the Declarations of Jordan Velazquez and
Adenamar Gonzalez in support of Plaintiffs' Opposition to
Defendants' Motion for Summary Judgment. These Declarations,
however, do not contain specific testimony as to the work
performed by Plaintiffs, the amounts paid to any Plaintiff, the
amounts owed to any Plaintiff, or any other information as to
Plaintiffs other than Velazquez and Gonzales.  The Declaration of
Gonzalez contains tangential evidence at best as to the work of
the other Plaintiffs in this matter when he testifies he "worked
in a crew with the other Plaintiffs in this case."

On this record, the Court concludes Plaintiffs have not
offered sufficient evidence as to the claims against Defendants
brought by Giovanni Ballesteros-Moreno, Leonardo Cobos-Perez,
Luis Enrique Garcia-Galvez, Erasto Jovel-Osorio, Francisco
Villanueva-Villatoro, Noe Arnoldo Zamora-Rodriguez, Ariel Garcia-
Laparra, and Yucundo to create any jury question as to
Plaintiffs' claims.  Accordingly, the Court grants Defendants'
Motion for Summary Judgment as to those Plaintiffs.

**II.  Plaintiffs' claims under the FLSA.**

As noted, Defendants assert they are entitled to summary
judgment as to Plaintiffs' FLSA claims because they were not
Plaintiffs' employer within the meaning of the FLSA.

8 - OPINION AND ORDER

### A.    Standards.

Congress enacted the FLSA to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well being of workers." 29 U.S.C. § 202(a). The Supreme Court has made clear that the FLSA is to be construed expansively in favor of coverage because broad coverage is essential to accomplish the goals of this remedial legislation. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296-97 (1985). *See also Hale v. State of Ariz.*, 967 F.2d 1356, 1362 (9th Cir. 1992)(same).

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The Supreme Court has described the FLSA's definition of an employee as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)(internal quotations and citation omitted). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA defines "'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)(quoting 29 U.S.C. §§ 203(e), (g)). "[T]he words 'suffer' and 'permit' as used in the statute mean with the knowledge of the employer." *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)(internal quotations and citation

9 - OPINION AND ORDER

omitted). The Supreme Court has emphasized the "striking
breadth" of the definition of "employee" and has noted it
"stretches the meaning of 'employee' to cover some parties who
might not qualify as such under a strict application of
traditional agency law principles." *Nationwide Mut. Ins. Co.*,
503 U.S. at 326.

Under the FLSA "[n]either the common law concepts of
'employee' and 'independent contractor' nor contractual
provisions purporting to describe the relationship are
determinative of employment status." *Nash v. Res., Inc.*, 982 F.
Supp. 1427, 1433 (D. Or. 1997)(citing *Real v. Driscoll*, 603 F.2d
748, 754-55 (9th Cir. 1979)). "[D]etermination of whether an
employer-employee relationship exists does not depend on
'isolated factors but rather upon the circumstances of the whole
activity.'" *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d
1465, 1469 (9th Cir. 1983)(quoting *Rutherford Food Corp. v.
McComb*, 331 U.S. 722, 730 (1947)). "The touchstone is 'economic
reality.'" *Id.* (quoting *Goldberg v. Whitaker House Cooperative,
Inc.*, 366 U.S. 28, 33 (1961)).

The Ninth Circuit has identified regulatory and
nonregulatory factors the Court should consider when determining
the economic realities of a potential employer-employee
relationship. *See Torres-Lopez v. May*, 111 F.3d 633, 640 (9th
Cir. 1997).

10 - OPINION AND ORDER

**B.   Regulatory Factors.**

The Ninth Circuit has identified four "regulatory factors" the Court should consider when determining the economic realities of a potential employer-employee relationship:

> "[W]hether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and( 4) maintained employment records."

*Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991)(quoting *Bonnette*, 704 F.2d at 1470). "[T]hese particular factors are merely guidelines. . . . The determination of whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity." *Id.* (quotations omitted).

At oral argument, Plaintiffs conceded Defendants did not have the power to hire or to fire Plaintiffs or to determine the rate and method of payment to Plaintiffs. Plaintiffs also conceded Defendants did not maintain employment records for Plaintiffs. Although Plaintiffs assert Defendants supervised and/or controlled Plaintiffs' conditions of employment because they "controlled . . . the overall work schedule by determining when work on the [entire] project began and had to be completed," Plaintiffs conceded at oral argument that there is not any evidence that Defendants directly set Plaintiffs' work schedule. Plaintiffs, however, assert Defendants indirectly determined

11 - OPINION AND ORDER

Plaintiffs' work schedule because LC Construction as the general
contractor set the parameters for the project's beginning and end
dates.

Plaintiffs also assert LC Construction "had the
economic power to shut off payments to subcontractors and
substitute others in their place."  To support these assertions,
Plaintiffs rely on the Declarations of Adenamar Gonzales and
Jordan Velazquez.

Gonzalez testifies in his Declaration that Larry B.
Cowlishaw "supervised our work.  He used to visit the work site
every two or three days."  Gonzales Decl. ¶ 4.  Gonzales further
testifies in pertinent part:

> 5.  On several occasions [Larry B. Cowlishaw]
> showed me and my supervisor, Jose Cervantes, the
> plans for the house we were working on.
>
> 6.  We discussed changes to the plans, and [Larry
> B. Cowlishaw] showed me on the plans where the
> changes were required to be made.
>
> 7.  [Larry B. Cowlishaw] gave me a card for the
> LC Construction and Remodeling company, and told
> me that he owned the company.
>
> 8.  On one occasion [Larry B. Cowlishaw] required
> that we move a stairway that had already been
> framed in.
>
> 9.  [Larry B. Cowlishaw] said that if I had
> questions about how to carry out the work, I
> should call him.

Gonzales Decl. at ¶¶ 5-9.  Velazquez does not testify as to any
interaction with Larry B. Cowlishaw or as to Cowlishaw's alleged

12 - OPINION AND ORDER

supervision of the construction project.

Even considering these Declarations in the light most favorable to Plaintiffs, they do not establish that Larry B. Cowlishaw or LC Construction "controlled . . . the overall work schedule by determining when work on the [entire] project began and had to be completed" or "had the economic power to shut off payments to subcontractors and substitute others in their place." Moreover, even if Defendants had this authority, the Court concludes the authority to set an overarching start and finish date for a construction project does not establish Defendants had the authority or ability to supervise or to control work conditions, particularly when, as here, the general contractor hired a subcontractor who hired a second subcon- tractor, who, in turn, hired Plaintiffs.

On this record, the Court finds the regulatory factors do not support a conclusion that Plaintiffs were employees of Defendant Larry B. Cowlishaw or LC Construction.

### C.  Nonregulatory factors.

As noted, the regulatory factors are "merely guidelines. . . . The determination of whether an employer-employee relationship exists does not depend on [these] isolated factors." *Gilbreath*, 931 F.2d at 1324.  For example, in "several FLSA cases . . . the courts considered many . . . non-regulatory factors" including

13 - OPINION AND ORDER

(1) whether the work was a "specialty job on the production line," *Rutherford*, 331 U.S. at 730, 67 S. Ct. at 1477;

(2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without "material changes," *id.*;

(3) whether the "premises and equipment" of the employer are used for the work, *id.; see also Real*, 603 F.2d at 754 (considering the alleged employee's "investment in equipment or materials required for his task, or his employment of helpers");

(4) whether the employees had a "business organization that could or did shift as a unit from one [worksite] to another," *Rutherford*, 331 U.S. at 730, 67 S. Ct. at 1477;

(5) whether the work was "piecework" and not work that required "initiative, judgment or foresight," *id.; see also Real*, 603 F.2d at 754 (considering "whether the service rendered requires a special skill");

(6) whether the employee had an "opportunity for profit or loss depending upon [the alleged employee's] managerial skill," *Real*, 603 F.2d at 754;

(7) whether there was "permanence [in] the working relationship," *id.;* and

(8) whether "the service rendered is an integral part of the alleged employer's business," *id.*

*Torres-Lopez,* 111 F.3d at 640.  Although *Torres-Lopez* involved claims under both the FLSA and the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), the Ninth Circuit considered the nonregulatory factors when evaluating the plaintiffs' claims under both the FLSA and the AWPA.

Here Plaintiffs primarily rely on the nonregulatory
factors set out in *Torres-Lopez* to establish that LC Construction
and/or Larry B. Cowlishaw's actions constituted supervision and
control of Plaintiff's conditions of employment to the degree
that Larry B. Cowlishaw and/or LC Construction were Plaintiffs'
employers within the meaning of the FLSA.

In *Torrez-Lopez*, the plaintiffs brought an action
against the defendant, a cucumber grower, under the FLSA and AWPA
on the ground that the defendant failed to pay them minimum
wages.  The Ninth Circuit examined the regulatory and
nonregulatory factors and concluded the defendant "exercised
significant control over the farmworker's working conditions
. . . [and] exercised a substantial degree of supervision over
the work performed by the farmworkers. " *Id.* at 642.  The court
noted:

> First, [the defendant] controlled the overall
> harvest schedule and the number of workers needed
> for harvesting by staggering the planting dates of
> the cucumbers.  [The defendant] also advised
> Ag-Labor about when to begin the harvest.  [The
> defendant] had the power to decide which days were
> suitable for harvesting; for example, it called
> off the harvest one day because of a shortage of
> bins.
>
> Second, . . . [the defendant] had the right to
> inspect all the work performed by the farmworkers,
> both while it was being done and after the
> cucumbers were picked.  [The] daily presence [of
> the defendant's job supervisor] in the fields
> helped to ensure that the farmworkers performed
> satisfactorily.  Ag-Labor, through Rodriguez, also
> communicated three to four times a week with [the

15 - OPINION AND ORDER

defendant's job supervisor's] to ensure that [he] was satisfied.

*Id.*  Based on the nonregulatory and regulatory factors, the Ninth Circuit concluded the defendant was the plaintiffs' employer pursuant to the FLSA and AWPA.[3]

Accordingly, the Court analyzes the nonregulatory factors here.

### 1.    First nonregulatory factor.

The parties dispute whether the framing work performed by Plaintiffs is a "specialty job on the production line."  In *Rutherford* the plaintiffs were "skilled [beef] boners" on a production line at the defendant's slaughterhouse.  The Supreme Court concluded the plaintiffs in that case performed a speciality job on the production line.  331 U.S. at 724.

Here Gonzales and Velazquez testify in their Declarations that "[w]hile framing involves some level of skill, basically, it is something that a person can learn to do in a few days."  Gonzalez Decl. ¶ 13; Velazquez Decl. ¶ 6.  The parties agree framing is one part of building a house for construction. It is questionable, however, whether framing, a skill one can learn in a "few days," is equivalent to the skill required in

------

[3] The Court notes the parties conceded at oral argument that they were unable to find any cases analyzing the employer/employee relationship under the FLSA in the context of a construction project involving a general contractor and several subcontractors.

boning beef. In addition, Plaintiffs assert in their Response to
Defendants' Motion for Summary Judgment that the work they
performed was work that "requires no great 'initiative, judgment,
or foresight.'" Pls.' Resp. at 13 (quoting *Torres-Lopez*, 111
F.3d at 644 and *Rutherford*, 331 U.S. at 730). Plaintiffs'
testimony and assertions suggest they were not performing work
that was the equivalent of the "specialty job on the production
line" in *Rutherford*.

### 2.    **Second nonregulatory factor.**

Here there is not any evidence in the record as to
whether responsibility under the contracts passed from one labor
contractor to another without "material changes."

### 3.    **Third nonregulatory factor**

There is not any evidence on the record as to
whether Defendants owned the premises on which Plaintiffs' work
occurred. The parties conceded at oral argument that they did
not know whether Defendants owned the premises at issue and, in
light of the nature of the project and Defendants' position as
general contractor, that it is unlikely Defendants owned the
premises. In addition, Plaintiffs conceded there is not any
evidence that Plaintiffs used Defendants' equipment for their
work.

### 4.    **Fourth nonregulatory factor.**

Plaintiffs assert they did not have a business

17 - OPINION AND ORDER

organization that could or did "shift as a unit from one worksite
to another" and point to the Declarations of Velazquez and
Gonzalez to support their assertion.  Velazquez and Gonzalez
testified:  "After we quit working on the job for LC Construction
and Remodeling[,] . . . [we] were able to work on one other job
together for about two months.  After that we never worked
together again."  Velazquez Decl. ¶ 8; Gonzalez Decl. ¶ 15.

        On this record, the Court concludes there is not a
factual basis from which jurors could find Plaintiffs acted
regularly as a business organization that shifted from one
worksite to another.

### 5.   **Fifth and Sixth nonregulatory factors.**

        The parties do not dispute Plaintiffs' framing
work was piece work and did not require "initiative, judgment or
foresight" and that Plaintiffs did not have any opportunity for
profit or loss "depending on managerial skill[s]."

### 6.   **Seventh nonregulatory factor.**

        Plaintiffs concede their relationship with LC
Construction and/or Larry R. Cowlishaw did not last past the
construction project at issue.  Nevertheless, Plaintiffs assert
it is the nature of construction work in general that
relationships do not last beyond a single project, and,
therefore, the Court should apply a "relative permanence"
standard to determine whether there was "permanence [in] the

18 - OPINION AND ORDER

working relationship."  Plaintiffs cite a number of cases from
the Fifth Circuit, the Southern District of New York, and the
Eastern District of North Carolina to support their assertion
that the Court should apply a relative permanence standard.  The
Court notes, however, those cases did not involve construction
work.  In addition, the courts in those cases described the
"relative permanence" standard as "recurring and relatively
permanent, although seasonal."  *See, e.g., Beliz v. W.H. McLeod &
Sons Packing Co.*, 765 F.2d 1317, 1328 (5th Cir. 1985).

        Here Defendants note Plaintiffs worked on this
project for three months in 2006 and have never worked for them
on any project again, and, therefore, there is not any permanence
in their relationship.  The Court agrees.  This record does not
reflect Plaintiffs and Defendants had any kind of recurring or
relatively permanent relationship.

        **7.    The eighth nonregulatory factor.**

        The parties do not dispute framing is an integral
part of constructing homes.

    In summary, the majority of regulatory and nonregulatory
factors do not support a conclusion that Plaintiffs were
employees of either Larry B. Cowishaw or LC Construction within
the meaning of the FLSA.  Plaintiffs have, at best, provided
evidence from which jurors could find Plaintiffs were employees
of some entity, but not that they were Defendants' employees.

19 - OPINION AND ORDER

The record reflects Larry R. Cowlishaw and/or LC Construction
hired P.I.C., who hired Hammer Construction, who hired
Plaintiffs.  Although Larry B. Cowlishaw may have occasionally
been on-site, the record does not support the conclusion that
Larry B. Cowlishaw or LC Construction supervised or controlled
Plaintiffs' employment.  The Court, therefore, concludes
Plaintiffs have not provided any factual record from which jurors
could find that Larry B. Cowlishaw and/or LC Construction was
their employer within the meaning of the FLSA.

Accordingly, the Court grants Defendants' Motion for Summary
Judgment as to Plaintiffs' FLSA claims.

**III. Oregon Law**

Under Oregon law independent contractors are not "employees"
and, therefore, are "not entitled to the protection of Oregon or
federal minimum wage and overtime laws." *Perri v. Certified
Languages Int'l, LLC*, 187 Or. App. 76, 81 (2003)(citing Or. Rev.
Stat. § 652.310(2)).  To determine the status of a worker, Oregon
courts apply "a common law 'right to control' test." *Perri,*
187 Or. App. at 82.  "The principal factors under that test are
(1) the right to, or the exercise of, control; (2) the method of
payment; (3) the furnishing of equipment; and (4) the right to
fire." *Id.* (citing *Castle Homes, Inc. v. Whaite*, 95 Or. App.
269, 272 (1989)).  "No one factor is dispositive; they are to be
viewed in their totality." *Perri,* 187 Or. App. at 82 (citation

20 - OPINION AND ORDER

omitted).  Oregon courts have noted these factors are "similar
to" the four factors examined under the FLSA's economic-realities
test.  *Id.*

Plaintiffs conceded at oral argument that the analysis of
Defendants' status was not materially different under Oregon law,
and, therefore, if the Court concluded Defendants are entitled to
summary judgment under the FLSA, the Court's conclusion should be
the same as to Plaintiffs' claims under Oregon's wage-and-hour
laws.  The Court agrees.

Accordingly, because the Court has concluded Defendants are
entitled to summary judgment as to Plaintiffs' FLSA claims, the
Court also concludes Defendants are entitled to summary judgment
as to Plaintiffs' claims under Oregon's wage-and-hour laws.  The
Court, therefore, grants Defendants' Motion for Summary Judgment
as to Plaintiffs' claims under Oregon's wage-and-hour laws.

**IV.  Defendants' request for attorneys' fees.**

In their Motion for Summary Judgment, Defendants seek
attorneys' fees under the FLSA, Oregon Revised Statute
§ 20.105, and Federal Rule of Civil Procedure 11 on the grounds
that there is "no objective factual or legal basis for the claims
against Defendants," Plaintiffs' counsel "has demonstrated a
reckless disregard for the law, and this lawsuit is abusive."

Although the Court has granted Defendants' Motion for
Summary Judgment, the Court does not agree Plaintiffs lacked an

21 - OPINION AND ORDER

objective legal or factual basis for their claims against Defendants or that Plaintiffs' counsel demonstrated reckless disregard for the law.  The nature of an employment relationship under the FLSA and Oregon's wage-and-hour laws in the construction context is complicated and unclear and requires a court to engage in a multifactor analysis that includes extrapolating conclusions from various other employment contexts.

Accordingly, on this record and in the exercise of its discretion, the Court denies Defendants' request for attorneys' fees under the FLSA, Oregon Revised Statute § 20.105, and/or Federal Rule of Civil Procedure 11.

## CONCLUSION

For these reasons, the Court **GRANTS** the Motion (#63) for Summary Judgment of LC Construction and Larry B. Cowlishaw and **DENIES** Defendants' request for attorneys' fees.

The Court **DIRECTS** Defendants LC Construction and Larry B. Cowlishaw to submit a form of judgment no later than May 21, 2010.

IT IS SO ORDERED.

DATED this 6th day of May, 2010.

ANNA J. BROWN
United States District

22 - OPINION AND ORDER